**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 22-1930**

───────────

VIRGINIA GARCIA CORTES,

      Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

      Respondent.

───────────

On Petition for Review of an Order of the Board of Immigration Appeals.

───────────

Argued:  January 24, 2024            Decided:  June 17, 2024

───────────

Before KING, WYNN, and RUSHING, Circuit Judges.

───────────

Petition granted in part, denied in part, and dismissed in part by published opinion.  Judge Wynn wrote the opinion, in which Judge King joined. Judge Rushing wrote a dissenting opinion.

───────────

**ARGUED:**  Zindzi Cloy Baugh Corbett, LAW OFFICES OF JAY S. MARKS, LLC, Silver Spring, Maryland, for Petitioner.  Andrea Gevas, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Jay S. Marks, LAW OFFICES OF JAY S. MARKS, LLC, Silver Spring, Maryland, for Petitioner. Brian Boynton, Principal Deputy Assistant Attorney General, Kiley Kane, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

WYNN, Circuit Judge:

Virginia Garcia Cortes petitions for review of a Board of Immigration Appeals decision affirming an Immigration Judge's denial of her application for cancellation of removal. The Immigration Judge and Board of Immigration Appeals denied Garcia Cortes's application on the basis that she failed to make the requisite showing under 8 U.S.C. § 1229b(b)(1)(D) that her removal would impose "exceptional and extremely unusual hardship" on her daughter.

We conclude that the facts as found by the Immigration Judge do not support a determination that Garcia Cortes's daughter would suffer exceptional and extremely unusual hardship if Garcia Cortes was removed. But because the Immigration Judge failed to consider key portions of a therapist's letter that was central to Garcia Cortes's argument, we vacate and remand for further proceedings.

I.

A.

When the government seeks to remove a noncitizen and an Immigration Judge finds that the noncitizen is removable, the noncitizen may seek discretionary relief from removal.[1] *See* 8 U.S.C. § 1229b. Relevant here, a noncitizen who is found to be "inadmissible or deportable from the United States" may seek cancellation of removal. *Id.* § 1229b(b)(1). If an Immigration Judge grants cancellation of removal, the noncitizen will

---

[1] In line with Supreme Court practice, "[t]his opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020).

be permitted to remain in the United States and will be deemed a lawful permanent resident. *Id.*

"An [Immigration Judge] deciding a noncitizen's request for cancellation of removal proceeds in two steps." *Wilkinson v. Garland*, 601 U.S. 209, 212 (2024). At the first step, the Immigration Judge must determine whether the noncitizen meets the statutory eligibility requirements for cancellation of removal. *Id.* That step requires a noncitizen who—like Garcia Cortes—does not already possess lawful-permanent-resident status to establish that (1) she "has been physically present in the United States for a continuous period of not less than 10 years" before applying for cancellation of removal; (2) she "has been a person of good moral character during such period"; (3) she has not been convicted of certain enumerated criminal offenses; and (4) "removal would result in exceptional and extremely unusual hardship to [her] spouse, parent, or child, who is a citizen" or lawful permanent resident "of the United States." 8 U.S.C. §§ 1229b(b)(1)(A)–(D).

If a noncitizen establishes eligibility for cancellation of removal, then the second step permits the Immigration Judge to exercise discretion over whether to grant cancellation of removal. *Wilkinson*, 601 U.S. at 212–13.

B.

Garcia Cortes is a citizen of Mexico who entered the United States in 2000 without being admitted or paroled. After living with her family in the United States for over a decade, she applied for asylum in 2014. Three years later, the Department of Homeland Security initiated proceedings to remove her pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).

3

When she appeared before an Immigration Judge in 2018, Garcia Cortes withdrew her asylum application, conceded that she could be removed, and requested cancellation of removal under 8 U.S.C. § 1229b(b)(1).

The Immigration Judge found that Garcia Cortes satisfied the first three statutory eligibility requirements for cancellation of removal. But he rejected Garcia Cortes's request after concluding that she could not satisfy the fourth statutory requirement—whether her removal would impose "exceptional and extremely unusual hardship" on a family member who was an American citizen or lawful permanent resident. 8 U.S.C. § 1229b(b)(1).

In seeking to establish that fourth element, Garcia Cortes presented evidence that her then-fourteen-year-old daughter, R., would experience severe emotional distress and be at increased risk of self-harm if Garcia Cortes was removed. Garcia Cortes's written evidence included letters from R. and R.'s therapist.

R.'s letter stated that she was very close with her mother and did not "know how [she could] live without" her. J.A. 242–43.[2] The therapist's letter discussed R.'s mental health, including her diagnoses of Major Depressive Disorder and Unspecified Anxiety Disorder; her history of self-harm behaviors; how she had benefitted from therapy; and the therapist's expert judgment that R. "would experience much suffering and hardship if removed from her mother's care," which would in turn "increas[e] her risks for severe depression, self-injury behaviors and suicidal ideation." J.A. 265–66.

---

[2] Citations to the J.A. refer to the Joint Appendix filed by the parties in this appeal.

4

Garcia Cortes also presented extensive testimony. In part, Garcia Cortes expressed concern that while R. is able to receive therapy through her mother's insurance, she would lose that insurance coverage if her mother was removed from the country.

Based on the evidence presented, the Immigration Judge found that R.'s mental health concerns were either resolved or well-managed with therapy; that R. would lose her health insurance if her mother was removed, but that she likely would be able to receive insurance by applying for Medicaid; and that if Garcia Cortes was removed, R. would still live in the United States with a caring family from whom she would receive adequate financial and emotional support. Based on those factual findings, the Immigration Judge denied Garcia Cortes's application for cancellation of removal on the ground that while R. would experience some hardship from her mother's removal, her hardship would not rise to the level of exceptional and extremely unusual hardship. Accordingly, the Immigration Judge ordered that Garcia Cortes either voluntarily leave the country or be removed.

Garcia Cortes appealed to the Board of Immigration Appeals ("the Board"). A divided three-member panel of the Board adopted and affirmed the Immigration Judge's decision. The majority of the panel found that "the Immigration Judge made plausible predictive findings that are not clearly erroneous" and considered all relevant evidence in making his decision. J.A. 4–5. The dissenting member of the panel would have remanded for additional factfinding based on her view that the Immigration Judge "did not make sufficient factual findings regarding how a gap in [health insurance] coverage might affect [R.'s] documented mental health conditions" and "seems to have assigned limited weight

to the letters from [R.'s] psychotherapist and [R.], as he d[id] not meaningfully address either of them when he discusse[d] the mental health issues." J.A. 7.

Following the Board's decision, Garcia Cortes timely petitioned this Court for review.

## II.

Because the Board expressly adopted the Immigration Judge's decision as its own, we review both the Board's opinion and the Immigration Judge's decision as the final order from which the appeal was taken.[3] *Martinez v. Holder*, 740 F.3d 902, 908 n.1 (4th Cir. 2014), *as revised* (Jan. 27, 2014); *Gonzalez Galvan v. Garland*, 6 F.4th 552, 556 (4th Cir. 2021). But before addressing Garcia Cortes's challenge to those combined decisions, we first resolve Respondent's challenge to our jurisdiction to decide this appeal. We consider that issue de novo. *Li v. Holder*, 666 F.3d 147, 149 (4th Cir. 2011).

Generally, a denial of an application for cancellation of removal is unreviewable in federal court. 8 U.S.C. § 1252(a)(2)(B)(i) ("Notwithstanding any other provision of law (statutory or nonstatutory) . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . any judgment

---

[3] In his opinion, the Immigration Judge expressed his view that it was "somewhat ironic that [Garcia Cortes] would be attempting to assert any hardship to her daughter based on a situation of [Garcia Cortes's] own making," J.A. 45, and that R. "is for the most part a healthy teenage girl who is going through the usual emotional difficulties of a teenage girl," J.A. 53. The Board explicitly stated that it "d[id] not subscribe to these comments and d[id] not rely on them in reaching [its] decision." J.A. 5. Neither do we. *See Arita-Deras v. Wilkinson*, 990 F.3d 350, 356 (4th Cir. 2021) (limiting review to the portions of an Immigration Judge's decision that were explicitly adopted by the Board).

regarding the granting of relief under section . . . 1229b."). But there is an important exception to that general rule: "[n]othing in [that statutory limitation] . . . shall be construed as precluding [judicial] review of constitutional claims or *questions of law* raised upon a petition for review filed with an appropriate court of appeals[.]" *Id.* § 1252(a)(2)(D) (emphasis added). Put another way, we have jurisdiction to review questions of law arising from denials of applications for cancellation of removal, but not questions of fact.

A trio of recent Supreme Court decisions—*Guerrero-Lasprilla v. Barr*, *Patel v. Garland*, and *Wilkinson v. Garland*—provide guidance on what qualifies as a reviewable question of law and an unreviewable question of fact. *See Guerrero-Lasprilla v. Barr*, 589 U.S. 221 (2020); *Patel v. Garland*, 596 U.S. 328 (2022); *Wilkinson*, 601 U.S. at 209.

In *Guerrero-Lasprilla*, the Supreme Court held that mixed questions of law and fact (i.e., "questions about whether settled facts satisfy a legal standard") qualify as questions of law. *Guerrero-Lasprilla*, 589 U.S. at 228. Applying *Guerrero-Lasprilla* the following year, this Court held in *Gonzalez Galvan v. Garland* that, at least when the parties agree on the underlying facts, the question of whether a petitioner has established a qualifying relative's exceptional and extremely unusual hardship is reviewable as a mixed question of law and fact. *Gonzalez Galvan*, 6 F.4th at 560. Then, earlier this year, the Supreme Court ratified our approach from *Gonzalez Galvan* in its opinion in *Wilkinson*, stating that because "the 'exceptional and extremely unusual hardship' standard in § 1229b(b)(1)(D) is a legal standard that an [Immigration Judge] applies to facts[,] . . . .[i]t is, inescapably, a mixed question of law and fact." *Wilkinson*, 601 U.S. at 221; *see id.* at 217 n.2 (citing *Gonzalez Galvan* as an example of a circuit court holding that application of the

exceptional and extremely unusual hardship standard presents a reviewable mixed question of law and fact).

By contrast, in *Patel* the Supreme Court held that an Immigration Judge's credibility determinations are unreviewable factual questions even if a petitioner "argu[es] that any reasonable judge would have been 'compelled to conclude' that [certain] testimony was credible[.]" *Patel*, 596 U.S. at 335; *accord Sorcia v. Holder*, 643 F.3d 117, 125 (4th Cir. 2011) ("[A] challenge to the weight attributed to certain factors relevant to immigration determinations does not present a question of law.").

Because whether an issue is reviewable turns on whether it raises an issue of fact or of law, we individually address whether we may exercise jurisdiction over each of the issues Garcia Cortes raises on appeal. Those arguments can be split into three categories: (1) whether the facts as found by the Immigration Judge and Board were sufficient as a matter of law to establish exceptional and extremely unusual hardship; (2) whether some of the Immigration Judge's factual findings were incorrect apart from any failure to consider evidence; and (3) whether the Immigration Judge failed to consider all relevant evidence that was presented to him.

First, Garcia Cortes argues the record evidence shows R. will suffer exceptional and extremely unusual hardship if her mother is removed. Because that issue asks us to assess whether settled facts meet the legal standard for hardship in § 1229b(b)(1)(D), this issue is effectively identical to the issues presented in *Gonzalez Galvan* and *Wilkinson*. Accordingly, we easily conclude that we possess jurisdiction to address this argument.

Second, portions of Garcia Cortes's brief contest the Immigration Judge's factual findings. For example, the Immigration Judge found that R. would remain in the United States if Garcia Cortes was removed, but, on appeal, Garcia Cortes argues that R. would move to Mexico with her mother—implying that the Immigration Judge's finding that R. would remain in the United States ran contrary to the evidence presented at the hearing. Because this argument would have us replace the Immigration Judge's factual findings with our own, it is analogous to the credibility determination at issue in *Patel*. We therefore lack jurisdiction to address it, and we must dismiss this portion of the petition.

Third, Garcia Cortes argues that the Immigration Judge failed to consider all the evidence presented in the hearing. While this issue does not ask us to apply the § 1229b(b)(1)(D) hardship standard and therefore does not fall directly within the scope of *Wilkinson*, we conclude that it nonetheless qualifies as a reviewable question of law under § 1252(a)(2)(D). To explain why, we start with a review of the procedure an Immigration Judge must follow when reviewing an application for cancellation of removal.

Because applications for cancellation of removal are decided as part of removal proceedings, Immigration Judges must follow the procedures set out in 8 U.S.C. § 1229a. *See Solis-Flores v. Garland*, 82 F.4th 264, 267 (4th Cir. 2023) (recognizing that § 1229a(c)(4)(A) imposes the relevant burden of proof on applicants for cancellation of removal under § 1229b); *Wilkinson*, 601 U.S. at 213 (applying procedural requirements from § 1229a to cancellation-of-removal proceedings under § 1229b). Among the procedures set out in § 1229a are requirements that the Immigration Judge base their decision "only on the evidence produced at the hearing" and "weigh the credible testimony

9

along with other evidence of record." 8 U.S.C. §§ 1229a(c)(1)(A), (4)(B). So, in arguing that the Immigration Judge failed to consider all record evidence, Garcia Cortes effectively asks us to review whether the Immigration Judge complied with the procedures mandated by § 1229a.

Courts typically view the question of whether an agency has complied with statutorily imposed procedural requirements as a pure question of law. *See, e.g.*, *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993) (stating that "when an agency action is challenged" for failure to follow proper procedures, "[t]he entire case on review is a question of law, and only a question of law"). In line with that view, two of this Court's unpublished cases have held that questions about whether the Board properly considered evidence or explained its decision are reviewable under § 1252(a)(2)(D). *See Barrera v. Garland*, No. 21-1164, 2021 WL 5755078, at *1 (4th Cir. Dec. 3, 2021) (per curiam) (exercising jurisdiction to review whether an Immigration Judge "failed to consider . . . hardship evidence in its totality and . . . failed to sufficiently explain their decision[]"); *Garcia Gonzalez v. Garland*, No. 21-1606, 2022 WL 3210162, at *1 (4th Cir. Aug. 9, 2022) (per curiam) (exercising jurisdiction to review an Immigration Judge's denial of an application for cancellation of removal where the petitioner claimed in part that the Immigration Judge "failed to address significant evidence of hardship").

We confirm that the approach taken in those cases was correct. While determining if the Immigration Judge considered all the evidence put before him requires us to closely examine the evidence presented at the hearing and the factual findings the Immigration Judge made, this inquiry does not require us to second-guess the Immigration Judge's

10

factual findings. Rather, we need only determine whether the Immigration Judge's findings were legally sufficient to satisfy the procedural requirement that he consider all evidence placed before him. We may therefore exercise jurisdiction to consider whether the Immigration Judge ignored any of the evidence Garcia Cortes presented.

III.

Having established that we possess jurisdiction over two of the issues Garcia Cortes raises, we next address the merits of each issue. We conclude that the facts as found by the Immigration Judge do not support a determination that R. would suffer exceptional and extremely unusual hardship if Garcia Cortes was removed. However, because the Immigration Judge failed to consider evidence that is relevant to that question, we remand for additional proceedings.

A.

From the outset, we observe that *Wilkinson* requires us to reconsider the standard of review that we apply in cases that are reviewable pursuant to § 1252(a)(2)(D). That is because before the Supreme Court's recent decision in *Wilkinson*, this Court had held that we apply de novo review to mixed questions of law and fact that are reviewable pursuant to § 1252(a)(2)(D). *See Gonzalez Galvan*, 6 F.4th at 561.

However, *Wilkinson* makes clear that while we review "pure" questions of law de novo, we must apply "a more deferential standard of review" to cases involving mixed questions of law and fact. *Wilkinson*, 601 U.S. at 220, 222. The Supreme Court emphasized that "[m]ixed questions 'are not all alike'"—some may be primarily legal, while others are primarily factual. *Id.* at 221–22 (quoting *U.S. Bank N.A. v. Village at Lakeridge, LLC*, 583

U.S. 387, 395–96 (2018)). So, *Wilkinson* indicates that we should consider the nature of the questions presented before determining how much deference an opinion from the Board warrants. *See id.* at 225 ("Because this mixed question is primarily factual, that review is deferential."). That means that our previous decision to apply de novo review to all questions reviewable under § 1252(a)(2)(D) is no longer tenable. *See United States v. Williams*, 155 F.3d 418, 421 (4th Cir. 1998) (holding that we are not bound to follow a prior circuit decision when it is "clearly undermined" by a subsequent decision by the Supreme Court).

But while *Wilkinson* implies that the level of deference we apply differs from question to question, it does not provide clear guidance as to how we must determine the degree of deference owed in any particular case. Future courts will need to determine whether a mixed question is primarily factual or primarily legal and to select a correspondingly deferential standard of review. However, this case "present[s] no such question involving the standard of review," *Guerrero-Lasprilla*, 589 U.S. at 228, because the results of our analysis do not differ regardless of whether we apply de novo or abuse-of-discretion review. So, we leave to future decisions the task of sorting out how to apply the standard of review discussed in *Wilkinson*.

## B.

On the merits, we first address whether the Immigration Judge and the Board erred by concluding that the Immigration Judge's factual findings did not support a determination that R. would suffer exceptional and extremely unusual hardship from her

mother's removal. We conclude that the Immigration Judge correctly decided that the facts as he found them do not rise to the level of exceptional and extremely unusual hardship.

For hardship to be exceptional and extremely unusual, it must be "substantially beyond the ordinary hardship that would be expected when a close family member is removed." *Gonzalez Galvan*, 6 F.4th at 561 (cleaned up). In assessing hardship, relevant factors include the qualifying relative's age, health, length of residence in the United States, and family and community ties in the United States and abroad. *See Matter of Monreal*, 23 I. & N. Dec. at 63; *Matter of Andazola-Rivas*, 23 I. & N. Dec. 319, 319–22 (B.I.A. 2002); *Matter of Recinas*, 23 I. & N. Dec. 467, 468–70 (B.I.A. 2002).

In *Gonzalez Galvan*, we found that the petitioner did not establish that his children would suffer exceptional and extremely unusual hardship from his removal even though one of his children was diagnosed with ADHD and General Anxiety Disorder, his children already displayed "signs of heightened anxiety" due to the threat of his removal, his removal would impose financial strain on his family, and his removal risked limiting his children's options for college. *Gonzalez Galvan*, 6 F.4th at 556. In another, unpublished case, we held that the petitioner did not establish sufficient hardship despite their child's serious medical condition if the child could still access medical care after the petitioner's removal. *Ramirez v. Garland*, No. 22-2039, 2023 WL 4418227, at *2 (4th Cir. July 10, 2023) (per curiam) ("We note that the Board assumed that Ramirez's daughters had serious medical conditions, but that Ramirez failed to show that adequate medical care would not be reasonably available in Mexico.").

Here, the Immigration Judge found that R. (1) is doing well in school and participating in extracurriculars; (2) has mental health conditions that are either resolved or currently managed with therapy; (3) has trouble sleeping; (4) is not prescribed any medications except for melatonin; (5) would lose her mother's insurance, which currently pays for her therapy, but could continue therapy by obtaining insurance through Medicaid; (6) would continue to be financially supported by her father after her mother's removal; and (7) would be able to live with her brother and remain in a supportive, close-knit family. Accepting the Immigration Judge's findings, this case presents hardships to R. that, while substantial, are no greater than those present in *Gonzalez Galvan* and *Ramirez*. So, looking solely to the Immigration Judge's findings, we agree with the Board that, on the facts found, the Immigration Judge did not err by concluding that while R. would suffer "significant emotional and economic hardship," J.A. 5, that hardship is not so far beyond the hardship inherent in the removal of a parent as to be exceptional and extremely unusual.

## C.

But that is not the end of our inquiry because we must further consider Garcia Cortes' argument that the Immigration Judge failed to adequately consider the evidence presented to him. Specifically, she argues that the Immigration Judge failed to adequately consider (1) the therapist's letter, (2) R.'s letter, and (3) whether a gap in health insurance that R. would likely undergo between losing Garcia Cortes's health insurance and obtaining coverage from Medicaid would harm R. While we are satisfied the Immigration Judge sufficiently considered the latter two pieces of evidence, we are unable to conclude that he considered all material portions of the therapist's letter as was required.

14

By statute, Immigration Judges presiding over removal proceedings must base their decision on evidence produced at a hearing. 8 U.S.C. § 1229a(c)(1)(A). As they make their decision, they must "weigh the credible testimony along with other evidence of record," *id.* § 1229a(c)(4)(B), and may not rely on their "own, unsubstantiated knowledge," *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 953 (4th Cir. 2015). But Immigration Judges or "[t]he Board need not . . . write an exegesis on every contention. What is required is merely that it consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Casalena v. I.N.S.*, 984 F.2d 105, 107 (4th Cir. 1993) (quoting *Vergara–Molina v. I.N.S.*, 956 F.2d 682, 685 (7th Cir. 1992) (internal quotations and citations omitted).

"Ultimately, in reviewing agency decisions in immigration matters, it is 'our responsibility to ensure that unrebutted, legally significant evidence is not arbitrarily ignored by the factfinder.'" *Tassi v. Holder*, 660 F.3d 710, 719 (4th Cir. 2011) (quoting *Baharon v. Holder*, 588 F.3d 228, 233 (4th Cir. 2009)); *see Alvarez Lagos v. Barr*, 927 F.3d 236, 255–56 (4th Cir. 2019) ("We must 'ensure that unrebutted, legally significant evidence is not arbitrarily ignored by the factfinder,' and if that evidence is ignored, we must conclude that the agency has abused its discretion." (quoting *Rodriguez-Arias v. Whitaker*, 915 F.3d 968, 974 (4th Cir. 2019))). Here, the Immigration Judge's decision—and, consequently, the Board's—lacks sufficient indication that the key portion of the therapist's letter was considered.

The therapist's letter provided an overview of R.'s mental health diagnoses and treatment. But the letter primarily served to provide the therapist's expert judgment that R.

"is very close to [her] mother and would experience much suffering and hardship if removed from her mother's care . . . . Any separation from her mother will increase suffering and negatively impact her mental health stability, increasing her risks for severe depression, self-injury behaviors and suicidal ideation." J.A. 266. By providing a predictive judgment that Garcia Cortes's removal would increase R.'s risks for self-harm and suicidal ideation, that portion of the letter addressed the hardship R. would suffer from her mother's removal more directly than any other evidence presented to the Immigration Judge.

When he issued his decision, the Immigration Judge stated that he "carefully read the psychological report," which totaled eight pages.[4] J.A. 45. And throughout his decision, the Immigration Judge referenced portions of the therapist's letter specifying R.'s diagnosis and treatment history, stating that R. had smoked marijuana, and indicating that the risk of Garcia Cortes's removal had already caused R. anxiety and depression. The decision further noted that while Garcia Cortes testified that R. was presently suffering from anxiety, there was not "any evidence in the therapist's record that [R.] is having any regular anxiety attacks." J.A. 52.

Despite clearly having considered portions of the therapist's letter, the Immigration Judge never addressed the therapist's expert judgment about how Garcia Cortes's removal would impact R. Specifically, the Immigration Judge failed to address the therapist's prediction that R.'s risk of self-harm and suicidal ideation would increase if Garcia Cortes

---

[4] The therapist's letter is two pages; her attached documentation constitutes an additional six pages.

was removed. Instead, without stating whether he found the therapist's uncontested professional opinion credible, he found that while "there will be some emotional hardship to [R.] in the absence of her mother," that hardship would not "rise to the level of exceptional and extraordinary hardship." J.A. 53.

We cannot infer from the Immigration Judge's silence about the therapist's expert prediction that he found it to lack credibility. Rather, the Immigration Judge was required by statute to make a credibility determination before rejecting her conclusion: "if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal." 8 U.S.C. § 1229a(c)(4)(C). Because the Immigration Judge failed to make the required credibility finding and provided no explanation for why he departed from the therapist's "unrebutted, legally significant" opinion, *Tassi*, 660 F.3d at 719, we must conclude that he simply ignored that portion of the letter.[5]

By contrast, the Immigration Judge and the Board did not need to explicitly address R.'s letter. R.'s letter expressed that she was close with her mother and included the

---

[5] When Garcia Cortes appealed to the Board, the Board briefly acknowledged her argument "that the Immigration Judge ignored a letter from her daughter's psychotherapist opining that any separation from [Garcia Cortes] would negatively impact the daughter's mental health, increasing the risk of severe depression, self-injury, and suicidal ideation." J.A. 4. In response, however, the Board summarily stated that the Immigration Judge complied with the statutory procedural requirements by "consider[ing] the total evidence before him." *Id.* That means the Board did no more to consider the key portion of the therapist's letter than did the Immigration Judge, and its token recognition of Garcia Cortes's argument is no different the Immigration Judge's hollow statement that he had "carefully read the psychological report." J.A. 45.

statement that "I don't know how I can live without my mother . . . being here with me."
J.A. 242–43. R.'s letter undoubtedly shows the heart-wrenching nature of removal
proceedings. But the Immigration Judge and the Board could have read that language as
expressing the sentiment that she would be incredibly upset if her mother was removed,
rather than pointing to some risk of self-harm. The Immigration Judge and the Board could
therefore consider the letter "insufficiently significant to merit individual mention."
*Casalena*, 984 F.2d at 107.

Finally, the Immigration Judge and the Board did not need to address whether R.
would experience a gap in insurance coverage before she was able to obtain alternative
insurance because Garcia Cortes failed to timely raise that argument. An applicant for
cancellation of removal has the burden of establishing that they satisfy the relevant
statutory requirements, *Wilkinson*, 601 U.S. at 213, meaning they must put forth arguments
in favor of their position.

In her hearing, Garcia Cortes argued that if she were removed, R. would "lose her
insurance and consequently lose her [therapy sessions] because her brother w[ould] not be
able to pay for them." J.A. 143. After the Immigration Judge inquired about R.'s past
insurance coverage through Medicaid, Garcia Cortes did not argue that a temporary gap in
insurance coverage while switching insurance providers would itself impose exceptional
and extremely unusual hardship. Because the Immigration Judge therefore considered the
whole of the argument Garcia Cortes did present about R.'s loss of health insurance, he did
not err by failing to discuss the potential hardship a temporary gap in insurance coverage
might impose.

18

Because the Immigration Judge and the Board failed to adequately address the therapist's letter, we must remand for further proceedings. On remand, the Immigration Judge retains discretion to decide whether he finds the therapist's letter credible and to decide what, if any, weight he provides the therapist's predictive opinion regarding R.'s increased risk of depression, self-harm, and suicidal ideation. But the Immigration Judge is not free to ignore it.

IV.

Because the issue of whether an Immigration Judge complied with the statutory requirement to consider all the evidence presented to them does not require courts to second-guess an Immigration Judge's factual findings, this case presents a mixed question of law and fact over which we may exercise jurisdiction. And because the Immigration Judge here failed to consider the single most important piece of evidence Garcia Cortes offered at her hearing, he violated the procedure required by statute.

We therefore grant Garcia Cortes's petition in part, vacate the Board's Order, and remand the matter to the Board for further proceedings consistent with this opinion.

*PETITION GRANTED IN PART, DENIED IN PART,*
*AND DISMISSED IN PART*

RUSHING, Circuit Judge, dissenting:

Congress has forbidden courts from reviewing the Executive's factual findings regarding a noncitizen's application for cancellation of removal. 8 U.S.C. § 1252(a)(2)(B); *Patel v. Garland*, 142 S. Ct. 1614, 1622–1623 (2022). For some immigration decisions, like the denial of asylum, we review agency factfinding under a deferential "substantial evidence" standard. *Alvarez Lagos v. Barr*, 927 F.3d 236, 248 (4th Cir. 2019); *see* 8 U.S.C. § 1252(b)(4)(B); *Tassi v. Holder*, 660 F.3d 710, 719 (4th Cir. 2011). But for cancellation decisions, we cannot review the underlying factual findings at all.

The majority oversteps this limit on our authority. Claiming to consider whether, as a matter of law, "the Immigration Judge ignored any of the evidence," Maj. Op. 11, the majority actually reviews the soundness of the agency's factfinding and determines the agency gave the "most important piece of evidence" short shrift, Maj. Op. 19. I reach this conclusion for three reasons.

First, the Board of Immigration Appeals explicitly discussed "the key portion of the therapist's letter" that the majority says "the Immigration Judge's decision—and, consequently, the Board's"—failed to consider. Maj. Op. 15. In the Board's words:

> [Petitioner] argues that the Immigration Judge ignored a letter from her daughter's psychotherapist opining that any separation from the [petitioner] would negatively impact the daughter's mental health, increasing the risk of severe depression, self-injury, and suicidal ideation (Exh. 4 at Tab G). . . .
>
> It is apparent that the Immigration Judge considered the total evidence before him. We do not diminish the mental health struggles of the [petitioner's] daughter. However, the Immigration Judge was not required to accept the [petitioner's] view of the record. This is particularly so where the Immigration Judge is making predictive findings about the hardship that may or may not occur in the future.

> Here, the Immigration Judge made plausible predictive findings that are not clearly erroneous. He found that the [petitioner's] daughter, who was doing well in school, would continue to attend school (IJ at 11). He further did not clearly err in finding that the [petitioner's] daughter would be able to continue receiving mental health treatment through Medicaid (IJ at 12). The [petitioner's] daughter would continue to have a support network of her siblings and her father (IJ 11–14). The Immigration Judge properly acknowledged that the [petitioner's] daughter would face significant emotional and economic hardship, but that such hardship would not be substantially beyond the hardship inherent in the removal of one parent.

J.A. 4–5 (citations and footnote omitted). Plainly, the Board did not "simply ignore[]" the portion of the therapist's letter predicting that R.'s "risk of self-harm and suicidal ideation would increase." Maj. Op. 16–17. So I can only deduce that the majority must be evaluating the *substance* of the Board's factual assessment when it concludes that the Board's decision "lacks sufficient indication" that this portion of the therapist's letter "was considered." Maj. Op. 15.

Second, our Court "'presume[s] that, in reaching their conclusions, [Immigration Judges have] reviewed the evidence presented to them and made their decisions based on the relevant evidence.'" *Ibarra Chevez v. Garland*, 31 F.4th 279, 292 (4th Cir. 2022) (quoting *Nolasco v. Garland*, 7 F.4th 180, 190 (4th Cir. 2021)). Nothing rebuts that presumption here. Regarding the therapist's letter in particular, the Immigration Judge stated that he had "carefully read" it. J.A. 45–46. Indeed, throughout his decision, the Immigration Judge described the contents of the therapist's letter and records attached to it. *See*, *e.g.*, J.A. 44 ("According to the psychological report at Exhibit 4, tab G, [R.] is currently diagnosed with having Major Depressive Disorder and Anxiety Disorder Unspecified."); J.A. 44–45 ("According to the psychological report, almost immediately

21

after getting into treatment [R.] stopped the cutting activity or behavior and no longer does that."); J.A. 45 ("This [timeline of counseling services] is confirmed by the psychological report."); J.A. 45 ("The psychological report and the [petitioner] indicate that [R.] has had some other adolescent issues including smoking marijuana . . . ."); J.A. 45 ("The psychological report also indicates that the [petitioner's] immigration situation has also caused [R.] some anxiety and depression."); J.A. 52 ("The Court does not see any evidence in the therapist's record that [R.] is having any regular anxiety attacks.").

Third, the Immigration Judge evaluated evidence relevant to assessing the therapist's prediction that separating R. from her mother would increase her risk for mental health problems and found it "unlikely" that R. would "suffer exceptional and extremely unusual hardship in the future as a result of her [mother's] removal from the United States." J.A. 53–54. The Immigration Judge observed that "shortly after getting into counseling" in 2014, R. stopped cutting herself and has never resumed. J.A. 45; *see also* J.A. 51 (noting that this issue "has been resolved for more than four years"). He found it "significant that for a period of almost two years [after that] apparently the counselor and [R.] determined that counseling was no longer necessary." J.A. 51. And he found "a high probability that [R.] will continue with her counseling" in her mother's absence. J.A. 51. In addition to therapy, the Immigration Judge found "that any emotional impact on [R.] would be somewhat diminished by" her close and supportive relationships with her brother, sister-in-law, and sister, who would all remain in the United States with her. J.A. 53.

Contrary to the majority's assertion, the Immigration Judge would not have had to ignore the therapist's prediction or discount the therapist's credibility in order to conclude

that R. would not experience exceptional and extremely unusual hardship beyond that typically associated with the removal of a parent.  *See* Maj. Op. 17.  There was evidence that R. was not prescribed any medication for depression, anxiety, or any other mental health issue; that she had no current problem with self-harm or suicidal ideation; and that she would continue therapy in her mother's absence and be cared for by her "close knit family."  J.A. 53.  Thus, even accepting the therapist's prediction that removal of R.'s mother would "increas[e] her risks for severe depression, self-injury behaviors and suicidal ideation," J.A. 266, the Immigration Judge, weighing all the evidence, could "find[] it unlikely" that R. would "suffer exceptional and extremely unusual hardship" in her mother's absence, J.A. 53–54.  We are forbidden from reviewing that factual finding.

I would deny the petition in full.  Therefore, I respectfully dissent.